UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cr-267-MOC-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| SALATHEO FLUID, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence and Motion to Appoint Counsel. (Doc. No. 90). The Government has responded in opposition to the motion.

I.     BACKGROUND

Defendant was the primary courier for a cocaine base ("crack cocaine") Drug Trafficking Organization ("DTO"). On September 1, 2020, this Court sentenced Defendant to 188 months in prison after Defendant pled guilty to conspiracy to distribute and possess with intent to distribute cocaine base. (Doc. No. 66). Defendant is currently incarcerated at Federal Correctional Institute Gilmer in West Virginia, and his anticipated release date is January 22, 2031. (Doc. No. 97-2, Ex. B, p. 1). He has served approximately 47 months and has credit for good conduct time of approximately 5 months, for total time served of approximately 52 months. (Id.). This constitutes approximately one-third of his sentence.

Defendant has been sanctioned in prison on several occasions. In November 2020, Defendant was sanctioned for being insolent to a staff member and was sentenced to 30 days disciplinary segregation, suspended 180 days, and loss of email privileges for 30 days. (Doc. No.

-1-

97-3, Ex. C, p. 1). Defendant was also sanctioned for insolence towards a staff member in June 2019, and he lost commissary and email privileges for three months. (Id.).

Defendant has numerous prior felony convictions, including (1) Trafficking by Sell Schedule II (3/5/2009 conviction date; docket number 08CRS055854); (2) Possession With Intent to Sell/Deliver (6/8/2012 conviction, 12/15/2011 offense date; docket number 11CRS67633); and (3) Assault Inflicting Serious Injury on Law Enforcement Officer (2/5/2014 conviction date; docket number 13CR062671). (Doc. No. 44 at ¶ 16).

Defendant requests compassionate release based upon his hypertension and asthma comprising his immune system. Defendant alleges this resulted in him contracting COVID-19 in January 2021. (Doc. No. 90; Doc. No. 97-1, Ex. A, page 18). Defendant subsequently recovered and appears to have suffered few symptoms during his COVID-19 episode. (Ex. A, pp. 15–18).

On February 15, 2021, Defendant submitted a request for compassionate release to the warden. The request was based on the following medical conditions: high blood pressure and asthma, as well as the effects of a bullet wound to the lung. Defendant did not initially list the dangers associated with COVID-19 as a reason for being granted compassionate release. The warden denied this request on February 26, 2021. Defendant then submitted a motion to this Court for compassionate release.

Defendant is 41 years old and suffers from asthma and hypertension. (Doc. No. 97-1, Ex. A, pp. 13, 38). Defendant is prescribed two inhalers for his asthma. (Id. at p. 13). Defendant has an Albuterol inhaler that is directed not be used daily, but up to four times a day as needed. (Id.). Defendant also has a Mometasone Furoate inhaler that he uses at bedtime. (Id.). Defendant also is prescribed a daily dose of 25 mg of hydrochlorothiazide for his hypertension. All of these

conditions appear well-controlled at this time with medication provided by the institution. Defendant is fully ambulatory and engages in all normal activities of daily living (ADLs).

Defendant asserts that he suffers from "moderate to severe asthma," which is identified by the CDC as a risk factor. However, the BOP records show that the defendant does not present this condition; rather, his asthma is mild and intermittent. There is no evidence that he ever sought or received treatment while incarcerated for any acute asthmatic episode. Further, his use of prescription drugs to manage his asthma was moderate. He was prescribed only Albuterol—a step-one inhaler to be used "as needed." (Doc. No. 87-1, Ex. A, p. 13). The records show that he was using much less than one dose per day, even though his instructions were to use "2 puffs by mouth 4 times a day as needed," but "don't use daily." (Id.). Additionally, he has a second inhaler (Mometasone Furoate) that is used at bedtime. (Id.).

Defendant was diagnosed with COVID-19 in January 23, 2021. (Id. at 18). Defendant's medical records indicate that he never displayed any symptoms and was deemed healthy and removed from isolation on February 8, 2021. At FCI Gilmer, where Defendant is held, BOP has fully vaccinated 142 staff members and 1,081 inmates. On March 2, 2021, BOP administered to Defendant the first dose of the COVID-19 vaccine produced by Pfizer. The second dose was administered on March 23, 2021.

## II. DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the

Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G.

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at pp. 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

-4-

Case 3:17-cr-00267-MOC-DCK   Document 101   Filed 08/11/21   Page 4 of 9

§ 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,

-5-

that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because he has failed to show extraordinary and compelling circumstances warranting his early release from prison. The pertinent guideline policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). The Government has acknowledged during the pandemic that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision. That circumstance now does not exist in this case because, even accepting that Defendant suffers from asthma and hypertension, Defendant has now received a vaccine approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease. See FDA Decision Memorandum, Pfizer—Dec. 11, 2020, https://www.fda.gov/media/144416/download. According to clinical trials published on the

CDC's website, the Pfizer vaccine was 95% effective at preventing COVID-19 in people who did not have a previous infection. More importantly for the purposes of this motion, clinical trials have shown that the Pfizer vaccine is 100% effective at preventing severe disease.

Therefore, because Defendant is at little-to-no risk of severe COVID-19 since he has been fully vaccinated, there are no "extraordinary and compelling reasons" justifying a compassionate release in this case. See United States v. Miller, No. 13-20928, 2021 WL 1115863, at *2 (E.D. Mich. Mar. 24, 2021) ("The court is aware of no scientifically derived evidence showing that severe complications or death from COVID-19 is likely, or even possible, after an individual has received a full vaccination regimen."). It is possible that the scientific consensus may shift dramatically if vaccine-resistant variants emerge or the vaccines prove less efficacious than studies to date suggest. If those possibilities materialize, nothing prevents Defendant from filing another motion for compassionate release. United States v. Singh, 2021 WL 928740, at *3-4 (M.D. Pa. Mar. 11, 2021) ("Indeed, the majority of CDC recommendations for fully vaccinated people indicate that the CDC's primary concern is not with fully vaccinated individuals being hospitalized due to COVID-19, but with such individuals potentially spreading the virus to unvaccinated individuals. . . . It is, of course, possible that future research will demonstrate that current, or future, COVID-19 variants mitigate the effectiveness of the Moderna vaccine to such an extent that the vaccine no longer provides individuals with effective protection."). Moreover, Defendant contracted COVID-19 and apparently recovered from it without significant consequence, which appears to diminish the risk significantly.

For all of these reasons, compassionate release is not warranted here. Further, even if Defendant were at elevated medical risk because of his hypertension and asthma, relief would be

denied because other considerations—including Defendant's risk of danger to the community, his vaccination, and BOP's strenuous efforts to protect inmates against the spread of COVID-19—counsel strongly against relief. Defendant continues to present a danger to the community. Defendant was previously convicted of felony possession of cocaine; possessing cocaine; selling cocaine; possessing with intent to manufacture, sell, or deliver a schedule II controlled substance; and another possession of cocaine conviction. See (Doc. No. 44 at ¶¶ 52, 53, 59, 65, 66). Defendant also has numerous convictions for assaultive offenses; including a felony physical injury to a law enforcement officer, and three resisting a public officer. (Id. at ¶¶ 38, 63, 66).

Defendant was the primary courier for a crack-cocaine DTO and was seen handling large amounts of narcotics. (Id. at ¶¶ 9-16). When police searched his home, Defendant was found to be in possession of a firearm, $8,000, and two ounces of cocaine. (Id.). At the time of his offense, Defendant was engaged in prohibited conduct that presented a significant danger to the community. This conduct took place just over four years ago, when Defendant was 37, and suffering from some of the same conditions he presents today. In addition, Defendant has a lengthy record of criminal conduct. (Id. at ¶¶ 34–71). In sum, Defendant fails to demonstrate how release, 47 months (52 months including good time credit) into a 188-month sentence for a serious drug crime, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A).

For all these reasons, the Court denies Defendant's motion. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under

Section 3582(c)(1)(A).

Finally, Defendant's motion to appoint counsel is also denied, as he has no constitutional right to counsel in assisting him with filing a post-conviction motion to vacate. See Pennsylvania v. Finley, 481 U.S. 551, 554 (1987); Hunt v. Nuth, 57 F.3d 1327, 1340 (4th Cir. 1995).

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release/Reduction of Sentence and Motion to Appoint Counsel, (Doc. No. 90), is **DENIED**.

Signed: August 11, 2021

Max O. Cogburn Jr.
United States District Judge