UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cr-267-MOC-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| SALATHEO FLUID, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence and Motion to Appoint Counsel. (Doc. No. 114). The Government has responded in opposition to the motion.

I.     BACKGROUND

Defendant was the primary courier for a cocaine base ("crack cocaine") Drug Trafficking Organization ("DTO"). Law enforcement executed a search warrant on Defendant's residence in April 2017. (Doc. No. 44 ¶ 7). Agents found a loaded .357 caliber revolver near Defendant's bed, as well as $8,000 in currency in a sock. (Id.). Law enforcement then found two ounces of cocaine in a sock located in the yard between defendant defendant's residence and the adjacent home. (Id.). The sock containing the narcotics matched the sock that contained the $8,000. (Id.). As early as December 2013, law enforcement had information that the defendant was the primary courier a crack cocaine DTO. (Id. at ¶ 10). A cooperating defendant reported having seen Defendant cooking cocaine into crack cocaine an ounce or two at a time. (Id. at ¶ 13). The cooperating defendant also reported seeing Defendant with ½ to one kilogram of cocaine, as well as seeing he and another conspirator with their supplier. (Id.). During this meeting there were

-1-

several half-kilograms or full kilograms of cocaine placed on a table. (Id.). The defendant was ultimately found to be responsible for possessing more than 840 grams of crack cocaine. (Id.). Defendant has numerous prior felony convictions, including 1) Trafficking by Sell Schedule II (3/5/2009 conviction date; docket number 08CRS055854); 2) Possession with Intent to Sell/Deliver (6/8/2012 conviction, 12/15/2011 offense date; docket number 11CRS67633); and 3) Assault Inflicting Serious Injury on Law Enforcement Officer (2/5/2014 conviction date; docket number 13CR062671). (Id. at ¶ 16).

This Court sentenced Defendant to 188 months in prison. (Doc. No. 53, p. 2). He is currently serving his sentence at Federal Correctional Institute Gilmer in West Virginia, with an anticipated release date of January 22, 2031. (Gov't Ex. A, p. 2). He has served approximately 58 months and has credit for good conduct time of approximately 6 months, for total time served of approximately 64 months. (Id.). This constitutes approximately one-third of his sentence. The defendant has been sanctioned in prison on several instances. In November 2020, the defendant was sanctioned for being insolent to a staff member and sentenced to 30 days disciplinary segregation, suspended 180 days, and loss of email privileges for 30 days. (Gov't Ex. C, p. 1). Defendant has also sanctioned for insolence towards a staff member in June 2019 and lost commissary and email privileges for three months. (Id.).

## II. DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the

Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A). As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

In United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–84. According to McCoy, because § 1B1.13 specifics its applicability only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284.

McCoy noted, however, that § 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. In stating as such, McCoy approvingly cited the Seventh Circuit's recent decision in United States v. Gunn, 980 F.3d 1178, at 1180 (7th Cir. 2020), which

similarly held that there currently exists no applicable policy statement for compassionate release motions brought by inmates. Nonetheless, the Seventh Circuit explained that § 1B1.13 remains useful in framing a court's inquiry as to what constitutes "extraordinary and compelling reasons." As it stated, "[t]he statute itself sets the standard: only "extraordinary and compelling reasons" justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii). The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of "extraordinary and compelling reasons"; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive." Id. (citing Gall v. United States, 552 U.S. 38, 49–50 (2007); Kimbrough v. United States, 552 U.S. 85 (2007)). Thus, although McCoy broadened district courts' discretion under § 3582(c)(1)(A), it nonetheless appeared to envision a system whereby courts remain confined within a traditional discretionary framework.

    McCoy also held that in considering whether extraordinary and compelling reasons exist for a sentence reduction, district courts are permitted to consider the "unusual length" of a sentence as well as the "'gross disparity' "between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." McCoy, 981 F.3d. at 284–85. With that understanding, McCoy concluded that Congress' recent amendments to the stacking provisions of 18 U.S.C. § 924(c), could, when coupled with other defendant-specific factors, constitute extraordinary and compelling reasons under § 3582(c)(1)(A)(i). Id.

    The Fourth Circuit held that courts "may consider" that "defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." Id. McCoy also stressed

that the "extraordinary and compelling" prong of Section 3582(c)(1)(A)(i) was a "heightened standard," and that "only those defendants who can meet the heightened standard of 'extraordinary and compelling reasons' may obtain relief." Id. at 286. As the court put it, "it was not unreasonable for Congress to decide that it did not want sentence reductions based on §403 of the First Step Act to be as widely available as relief under § 404–and thus to limit those reductions to truly extraordinary and compelling cases." Id.

In its broadest terms, McCoy thus holds that although Section 1B1.13 is no longer the applicable policy statement for compassionate release motions brought by inmates, defendants still must meet the "heightened standard" required by Section 3582(c)(1)(A)(i). Both before and after McCoy, defendants must clear the "extraordinary and compelling" threshold set forth in the statute. As McCoy put it, such relief will be granted in "truly exceptional cases[.]" Id. at 287–288.

Here, Defendant fails to meet the heightened standard required by Section 3582(c)(1)(A)(i). Defendant's age at the time of his crimes, his extensive prior criminal history, and the underlying facts of his crimes do not support granting his request for compassionate release. Defendant was approximately 34 to 38 years old when the crimes occurred, unlike the defendants in McCoy. He also had an extensive criminal history when he committed the underlying offenses. Finally, unlike the defendants in McKoy, Defendant did not receive stacked sentences in the context of 18 U.S.C. § 924(c). Thus, the reasons given in McKoy for granting compassionate release simply do not exist in this case. Here, Defendant received a low-end guideline sentence of 188 months. Had Defendant been charged currently, he still would have been subject to a ten-year mandatory minimum, and still would have scored at an offense level

31, criminal history category VI, with a guideline range of 188 to 235 months. Nothing in the First Step Act affects Defendant's statutory sentencing range or guideline range. Additionally, if the Court were to still to conclude that Defendant had articulated extraordinary and compelling reasons permitting relief, the danger Defendant presents to the community, the time remaining on his sentence, and all other considerations under 18 U.S.C. § 3553(a) necessitate Defendant's continued incarceration. For all these reasons, the Court denies Defendant's motion.

Finally, Defendant's motion to appoint counsel is also denied, as he has no constitutional right to counsel in assisting him with filing a post-conviction motion to vacate. See Pennsylvania v. Finley, 481 U.S. 551, 554 (1987); Hunt v. Nuth, 57 F.3d 1327, 1340 (4th Cir. 1995).

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release/Reduction of Sentence and Motion to Appoint Counsel, (Doc. No. 114), is **DENIED**.

Signed: July 20, 2022

Max O. Cogburn Jr
United States District Judge