UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00243-MOC
(3:17-cr-00267-MOC-DCK-1)

| | | |
|---|---|---|
| SALATHEO H. FLUID, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, [CV Doc. 1],[1] and Petitioner's Motion for Appointment of Counsel, [CV Doc. 7].

**I.  BACKGROUND**

Between 2013 and 2017, Petitioner Salatheo H. Fluid ("Petitioner") participated in a drug-trafficking conspiracy, serving as a courier and regularly cooking powder cocaine into crack cocaine for distribution. [CR Doc. 44 at ¶¶ 9-14: Presentence Investigation Report (PSR)]. In April of 2017, law enforcement officers executed a federal search warrant at Petitioner's residence. [Id. at ¶ 7]. Officers found a loaded firearm near Petitioner's bed and $8,000.00 in cash in a sock in Petitioner's room. [Id.]. They also found two ounces of powder cocaine wrapped in a matching sock in the yard. [Id. at ¶¶ 7, 12]. Several of Petitioner's co-conspirators confirmed that Petitioner

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:22-cv-00243-MOC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:17-cr-00267-MOC-DCK-1.

participated in the conspiracy and handled large quantities of powder and crack cocaine. [Id. at ¶¶ 10-11, 13-14]. Petitioner was identified as a drug courier for Anthony Pettus, who owned the residence where Petitioner was found. [Id. at ¶¶ 10-11; CR Doc. 62 at 16: Sentencing Tr.]. A cooperating Defendant stated that the firearm and two ounces of cocaine at the residence belonged to Petitioner and that Petitioner had cooked cocaine into crack cocaine for Pettus on a number of occasions. [CR Doc. ¶ 13].

A grand jury indicted Petitioner with one count of drug trafficking conspiracy in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count One); one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Two); one count of possession of a firearm in furtherance of a drug trafficking conspiracy in violation of 18 U.S.C. § 924(c) (Count Three); and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Four). [CR Doc. 10: Bill of Indictment]. The Government filed an information under 21 U.S.C. § 851, notifying Petitioner and the Court that it intended to seek an enhanced penalty based on Petitioner's prior felony drug offense. [CR Doc. 27: § 851 Information; see CR Doc. 11].

On November 6, 2017, Petitioner filed a pro se letter stating that he did not believe it was in his best interests to plead guilty. [CR Doc. 17]. He argued that his attorney should file a motion to suppress because the items in the room where he was found sleeping when agents executed a search warrant were not his. [Id.]. He argued that constructive possession could not be established solely by his proximity to "contraband," that his fingerprints were not found on the firearm, and that the evidence from two co-Defendants regarding Petitioner's involvement in the conspiracy was weak. [Id. at 2-3]. Petitioner filed two similar letters on January 2 and 23, 2018. [CR Docs. 24, 26].

On January 31, 2018, Petitioner entered into a plea agreement with the Government and agreed to plead guilty to the conspiracy offense. [CR Doc. 30 at ¶ 1: Plea Agreement]. The Government agreed to dismiss the remaining charges and to withdraw the § 851 information at sentencing, which would reduce the statutory mandatory minimum sentence from 20 years to 10 years' imprisonment. [Id. at 1-2]. Petitioner stipulated that there was a factual basis for his guilty plea, that he had read it and understood it, and that the factual basis could be used by the Court and the United States Probation Office to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a). [Id. at ¶ 15]. Other than relative to the weapon enhancement, Petitioner agreed not to object to any portion of the factual basis. [See CR Doc. 29 at 2: Factual Basis]. The parties agreed to jointly recommend that the amount of cocaine reasonably foreseeable to Petitioner was more than 280 grams, but less than 2,800 grams, and that the base offense level of 30 or 32 applied. [CR Doc. 30 at ¶ 8(a)]. Petitioner waived his rights to contest his conviction and/or sentence through appeal or post-conviction action, including pursuant 28 U.S.C. § 2255, excepting only claims of ineffective assistance of counsel, prosecutorial misconduct, and whether his prior conviction for assault inflicting serious injury on a law enforcement officer was a crime of violence under U.S.S.G. § 4B1.2. [Id. at ¶¶ 19-20].

Petitioner pleaded guilty in accordance with the plea agreement. At the plea and Rule 11 hearing, Petitioner testified that he understood that he was under oath and required to give truthful answers to the questions asked by the Court. [CR Doc. 31 at ¶ 1: Acceptance and Entry of Guilty Plea]. The Court reviewed the Indictment, including the charge and its minimum and maximum penalties and Petitioner testified that he understood them. [Id. at ¶¶ 8-9]. Petitioner testified that he had spoken with his attorney about how the Sentencing Guidelines might apply to his case and that the District Judge would not be able to determine the applicable guidelines range until after

Petitioner's Presentence Investigation Report (PSR) was prepared and Petitioner had the opportunity to comment on it. [Id. at ¶¶ 13-14]. Petitioner acknowledged that he understood that if the sentence imposed were more severe than Petitioner expected, or the Court did not accept the Government's sentencing recommendation, Petitioner would remain bound by his plea and have no right to withdraw. [Id. at ¶ 17]. Petitioner confirmed that he was, in fact, guilty of the charge to which he was pleading guilty. [Id. at ¶ 24].

Counsel for the Government described the terms of the plea agreement in detail. [CR Doc. 77 at 7-13: Plea Hearing Tr.]. After the Government reviewed the terms of the plea agreement, Petitioner testified that he understood its terms and agreed to them, including his appeal and post-conviction relief waiver. [CR Doc. 31 at ¶¶ 26-28]. Petitioner also testified that he had reviewed the factual basis with his attorney and that he had read it, understood it, and agreed with it. [Id. at ¶¶ 30-31]. Petitioner also affirmed that no one had threatened, intimidated, or forced him to plead guilty and that no one had made any promises of leniency, outside the terms of the plea agreement, to induce him to plead guilty. [Id. at ¶¶ 32-33]. Petitioner testified that he was satisfied with the services of his attorney. [Id. at ¶ 35]. Finally, Petitioner affirmed that he had heard and understood all parts of the proceeding and still wished to plead guilty. [Id. at ¶ 37]. Petitioner's attorney then stated that he had reviewed all the terms of the plea agreement with Petitioner, and that he was satisfied that Petitioner understood those terms. [Id. at ¶ 39]. The Magistrate Judge accepted Petitioner's guilty plea, finding it knowingly and voluntarily made. [Id. at 4].

At the sentencing hearing, Petitioner told the Court that all the answers he had given during the plea hearing were truthful and that he would give the same answers if the Court were to ask the same questions again. [CR Doc. 62 at 2-3]. Petitioner objected to the drug quantity, arguing that no drugs were found in his actual or constructive possession. He also argued he did not

4

Case 3:17-cr-00267-MOC-DCK   Document 121   Filed 03/27/23   Page 4 of 11

actually or constructively possess a firearm and that he should not be sentenced as a career offender. [Id. at 9-12]. The Government explained that a cooperating Defendant had provided that Petitioner was only pretending to be asleep when the search warrant was executed, that Petitioner had thrown two ounces of crack cocaine wrapped in a sock into the yard when officers entered the house, and that the matching sock was found in Petitioner's bedroom. [Id. at 12-13]. In addition to the crack cocaine that was thrown out the window, $8,000.00 in cash was found in Petitioner's room, where the firearm was located, indicating the firearm was used to protect Petitioner and his drug proceeds. [Id. at 13-14]. The Government noted that the report, which indicated Petitioner was responsible for multiple kilograms of cocaine that he was cooking into crack, was provided to the defense "early in discovery." [Id. at 14-17; see CR Doc. 52-1]. The Court overruled Petitioner's objections to the firearm enhancement and drug quantity, but found that despite his "terrible record," Petitioner was not a career offender. [Id. at 34, 47-48]. The Government withdrew its § 851 information and the Court sentenced Petitioner to a term of imprisonment of 188 months. [CR Doc. 53 at 2: Judgment]. Judgment on Petitioner's conviction was entered on September 28, 2018. [Id.].

Two years later, the Court reentered its judgment after granting in part Petitioner's motion to vacate based on his claim that his attorney failed to file a notice of appeal after Petitioner's request that he do so. [CR Docs. 65, 66]. On appeal, the Fourth Circuit affirmed Petitioner's conviction and sentence, holding that Petitioner knowingly and voluntarily pleaded guilty and that his plea was supported by a sufficient factual basis. The Fourth Circuit also held that Petitioner's guilty plea waived his challenge to the constitutionality of the search leading to his arrest, that ineffective assistance of counsel did not appear conclusively on the record, and that Petitioner's

sentence was procedurally and substantively reasonable. United States v. Fluid, No. 20-4481, 2022 WL 683360 (4th Cir. Mar. 8, 2022).

On May 26, 2022, Petitioner timely filed the instant motion to vacate under § 2255. [CV Doc. 1; see id. at 21]. As grounds for his § 2255 motion, Petitioner claims his attorney provided ineffective assistance of counsel by failing to investigate whether there was a valid search warrant and advising him to plead guilty without investigating the facts. [CV Doc. 1 at 4-14]. Petitioner also claims that his attorney "represented" that he would not be sentenced to more than 10 years if he pleaded guilty. [Id. at 10]. For relief, Petitioner seeks an evidentiary hearing and appointment of counsel or, in the alternative, that his conviction and sentence be vacated. [Id. at 21]. The Government responded to Petitioner's motion, [CV Doc. 4], and Petitioner replied, [CV Doc. 6].

This matter is now ripe for adjudication.

## II.     STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See

6

Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

To support an ineffective assistance claim based on the failure to investigate, a petitioner must present specific information to show what favorable evidence the investigation would have produced. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996). If there is "no reasonable probability that a possible defense would have succeeded at trial," counsel's failure to investigate such a defense is not prejudicial. See Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996). Even assuming that Petitioner's attorney failed to investigate the search warrant, Petitioner cannot show prejudice because officers had a valid warrant to search the residence where Petitioner was found with a firearm and $8,000.00 in cash. [See CV Doc. 4-1]. Because a valid warrant existed, Petitioner cannot show that but for counsel's alleged deficiency, he would not have pleaded guilty and would have insisted on going to trial on all the charges against him. Fugit, 703 F.3d at 260; see also Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (A petitioner cannot establish prejudice unless he proves that the "Fourth Amendment claim is meritorious and that there is a

8

reasonable probability that the verdict would have been different absent the excludable evidence."). The Court, therefore, will also deny this claim of ineffective assistance of counsel.

Petitioner also claims that his attorney was ineffective for failing to review discovery and for advising Petitioner to plead guilty without conducting any factual investigation, including interviewing witnesses identified by the Government. [CV Doc. 1 at 10]. Petitioner, however, makes no showing that such an investigation would have produced any favorable evidence. See Beaver, 93 F.3d at 1195. Moreover, Petitioner's pro se letters to the Court prior to his guilty plea evidence that he was aware that two co-Defendants had provided evidence against him. [See CR Docs. 17, 24, 26]. Additionally, the sentencing transcript supports that information connecting Petitioner to the conspiracy was provided early in discovery. [CR Doc. 62 at 15-17]. As such, Petitioner's claim that his attorney did not investigate the facts of the case appears without merit. Nonetheless, even accepting Petitioner's allegations, he cannot show prejudice.

Multiple cooperating Defendants and informants identified Petitioner as "the primary drug courier and crack cocaine cook for Anthony Pettus." [CR Doc. 44 at ¶ 6]. In addition to the firearm, cash, and crack cocaine found during the search of the residence where Petitioner was staying, this provided more than sufficient evidence supporting the charges against Petitioner. Moreover, Petitioner makes no showing that it would have been objectively reasonable for him to proceed to trial considering all the facts. See Fugit, 703 F.3d at 260 ("The challenger's subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts."). Petitioner benefitted significantly from his highly favorable plea agreement, obtaining dismissal of the § 851 enhancement, which reduced his mandatory minimum sentence by half, dismissal of the § 924(c) charge, which carried a

mandatory 5-year consecutive sentence, and a 3-level reduction for acceptance of responsibility. The Court, therefore, will also deny this claim of ineffective assistance of counsel.

Finally, Petitioner's contention that his attorney "represented" that he would not be sentenced to more than ten years if he pleaded guilty is belied by his sworn plea hearing testimony. The plea agreement specifically provided that "any estimate of the likely sentence is a prediction rather than a promise" and that the Court could sentence Petitioner up to the stated statutory maximum of life imprisonment. [CR Doc. 30 at 2]. At his plea hearing, Petitioner affirmed that he understood the mandatory minimum and maximum sentences, that his guideline range could not be determined yet, and that he could be sentenced higher or lower than that range. He also testified, that outside the terms of his plea agreement, no one had made any promises of leniency or a light sentence to induce his guilty plea. [CR Doc. 77 at 15-16]. Moreover, Petitioner has not alleged or shown extraordinary circumstances to overcome his sworn testimony to the Court. See Lemaster, 403 F.3d at 221-22. The Court, therefore, will also deny this claim.

In sum, Petitioner has failed to show any prejudice from the alleged deficient performance of his attorney or any extraordinary circumstances overcoming his sworn plea hearing testimony. As such, the Court will deny and dismiss Petitioner's ineffective assistance claims. See Strickland, 466 U.S. at 687-88. The Court will also deny Petitioner's motion for appointment of counsel as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 motion to vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. Petitioner's Motion for Appointment of Counsel [Doc. 7] is **DENIED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: March 27, 2023

Max O. Cogburn Jr.
United States District Judge

11

Case 3:17-cr-00267-MOC-DCK   Document 121   Filed 03/27/23   Page 11 of 11